IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| S. VICTOR WHITMILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 4:11-cv-752 |
| v. | ) |
| | ) |
| WARNER BROS. ENTERTAINMENT INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF HIS MOTION FOR PRELIMINARY INJUNCTION**

This is a straightforward case of reckless copyright infringement. Mr. Whitmill is a visual artist. He created what may be the most distinctive tattoo in the nation, namely, the work of art he created and applied onto the upper left side of the face of the former world heavyweight champion boxer Mike Tyson (the "Original Tattoo"). (Photographs of Mr. Whitmill in the process of creating the Original Tattoo and Mr. Tyson viewing the Original Tattoo immediately after it was created are attached as Exhibits 1 and 2 to Verified Complaint.)

Mr. Whitmill has learned that Defendant Warner Bros. Entertainment Inc. is planning to release a motion picture later this Spring entitled **THE HANGOVER 2** (the "Movie") that features an exact reproduction of the Original Tattoo, but on the face of one of the stars of the Movie (the "Pirated Tattoo"). That the Pirated Tattoo plays an important role in the Movie is underscored by Defendant's prominent and repeated use of the Pirated Tattoo in the various promotional and marketing materials it is using to advertise the Movie. (*See* the poster for the Movie, which is attached as Exhibit 6 to the Verified Complaint.)

These actions of Warner Bros. already infringe Mr. Whitmill's copyright in the Original Tattoo. If allowed to continue, that irreparable damage will increase exponentially. He thus seeks a

preliminary injunction to maintain the status quo and halt the irreparable damage until there can be a trial on the merits.

## SUMMARY OF THE PERTINENT FACTS

### The Original Tattoo

The Original Tattoo is an original work of authorship fixed in a tangible medium of expression, and thus is a work of visual art protected by copyright. 17 U.S.C. § 102. Mr. Whitmill owns the copyright in the Original Tattoo, as even Mr. Tyson acknowledged in writing at the time Mr. Whitmill created it back in 2003. (*See* release form signed by Mr. Tyson (Exhibit 3 to Verified Complaint)). A copy of Mr. Whitmill's Certificate of Registration of the copyright in the Original Tattoo is attached as Exhibit 5 to the Verified Complaint.

Mr. Whitmill has valued the exclusive rights he possesses in the Original Tattoo. He has *never* created a copy of the Original Tattoo on anyone else and has *never* licensed or otherwise authorized anyone else to make copies of or derivative works based upon the Original Tattoo.

That Mr. Whitmill is the artist who created the Original Tattoo is a fact that has been publicly disseminated over the years by, among others, Mr. Tyson himself, who has stated that fact in interviews that have been published in print, broadcast on television, shown in motion picture theaters, and disseminated on the Internet.

Moreover, Mr. Whitmill himself is easy to locate. Although he now lives and works in rural Missouri, he continues to operate a studio under the name Paradox Studio and maintains a website displaying his works and providing directions to his studio and information on how to contact him and make an appointment.

### The Infringing Tattoo

Mr. Whitmill recently learned that Defendant plans to release the Movie later this Spring and that the Movie prominently features the Pirated Tattoo. The Pirated Tattoo is substantially similar—

2

indeed, virtually identical—to the Original Tattoo and thus infringes Mr. Whitmill's copyright in the Original Tattoo.

Mr. Whitmill has never been asked by Warner Bros. or anyone else for permission for, and has never consented to, the use, reproduction, or creation of a derivative work based on his Original Tattoo, including the Pirated Tattoo. Nor has he ever been asked or agreed to the public display and distribution of a motion picture containing the Pirated Tattoo, or to the use of any of his other exclusive rights in the Original Tattoo under the Copyright Act.

### Potential Violation of Other Rights of Mr. Whitmill

Because he has not seen the Movie, Mr. Whitmill does not yet know whether Warner Bros. has violated other rights of his. However, there appears to be at least a likelihood that the Warner Bros. Movie has violated his moral rights under Section 106A of the Copyright Act, 17 U.S.C. § 106A and has committed actionable libel, as follows:

<u>Moral Rights</u>. The Original Tattoo is a work of visual art under Section 106A, which gives Mr. Whitmill the exclusive right "to claim authorship of that work" and "to prevent the use of his name as the author of the work of visual art in the event of a distortion, mutilation or other modification of the work which would be prejudicial to his or her honor or reputation." Until defendant is required to show the Movie to Mr. Whitmill, he cannot assess whether his moral rights have been violated.

<u>Libel</u>. Mr. Whitmill has worked hard to establish his reputation as a responsible, reliable, and dedicated visual artist who insures the consent and safety of his clients. For example, he refuses to create a tattoo on a client who appears to be inebriated. The news media reports on the Movie strongly suggest that the version of the tattoo artist in the Movie is nearly the polar opposite of Mr. Whitmill. For example, the HOLLYWOOD REPORTER issue of October 18, 2010, reported that "the tattoo artist character is 'pivotol' to the plot which features one of the characters going under the

3

needle during a night of debauchery."[1] A subsequent article in the HOLLYWOOD REPORTER (April 9, 2011), reports that the character of the tattoo artist "is described as 'crazy' and 'intense' and 'someone you're afraid to talk to.'"[2] Given that Mr. Whitmill is the artist who created the Original Tattoo, these reports, if accurate, strongly suggest that he could sufferable irreparable damage to his reputation from release of the Movie.

**ARGUMENT**

Warner Bros. should be enjoined from further copying, distributing, publicly displaying, or otherwise infringing Plaintiff's copyright in his Original Tattoo and/or contributing or inducing others to infringe the same, because Plaintiff is likely to succeed at a trial on the merits of Plaintiff's claims. Plaintiff can clearly demonstrate that he owns a valid copyright and that Warner Bros. is itself copying the original elements of that copyright, and/or inducing and/or contributing to the infringement of that copyright by others.

**I.      All Equitable Considerations Entitle Mr. Whitmill to a Preliminary Injunction.**

In deciding whether to enter a preliminary injunction, courts consider: (i) the probability the movant will succeed on the merits; (ii) the threat of irreparable harm to the movant; (iii) the balance of hardships between the parties; and (iv) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*); *see also Coca-Cola Co. v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004); *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000); *Aaron v. Target Corp.*, 269 F. Supp. 2d 1162, 1169-70 (E.D. Mo. 2003). "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). Here, all of the

---

[1] *See* http://www.hollywoodreporter.com/news/mel-gibson-appear-tattoo-artist-31340.
[2] *See* http://www.hollywoodreporter.com/news/why-liam-neesons-cameo-was-176706.

factors weigh heavily in favor of an injunction. Thus, Mr. Whitmill is entitled to the entry of a preliminary injunction against Warner Bros.

## II. Mr. Whitmill Can Establish a Reasonable Likelihood of Success on the Merits of his Copyright Infringement Claim.

A copyright infringement plaintiff only needs to prove that he owns a valid copyright and that the original elements of the copyrighted work were copied. *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006) (quoting *Taylor Corp. v. Four Seasons Greetings, LLC, [Taylor Corp. II]* 403 F.3d 958, 962-63 (8th Cir. 2005) (internal quotations omitted)); *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941 (8th Cir.1992). "Copying may be established (1) by direct evidence or (2) by showing that the defendants had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials." *Id.* (citing *Hartman v.Hallmark Cards, Inc.*, 833 F.2d 177 (8th Cir. 1987)).

### A. Mr. Whitmill Owns a Valid Copyright in the Original Tattoo He Created.

The Original Tattoo at issue here is the subject of U.S. Copyright Registration No. VA 1-767-704. Mr. Whitmill created the Original Tattoo while he was applying it to the face of Mr. Tyson. The Original Tattoo was entitled to copyright protection at that moment of completion. 17 U.S.C. § 102(a) (original work fixed in fixed in tangible medium of expression entitled to copyright protection). The Original Tattoo is "fixed" in that it can be perceived, with or without the aid of a machine, for more than a transitory duration. *See* 17 U.S.C. § 101, 102(a). "[O]riginality requires independent creation plus a modicum of creativity." *Feist Publ'n., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 346 (1991). This level of creativity and independent creation readily meets the minimal requirements for copyright protection. *See* 1 NIMMER ON COPYRIGHTS § 2.01[B] ("even [the] most commonplace and banal results of independent effort may command copyright

protection"). Thus, U.S. Copyright Registration No. VA 1-767-704 represents an indisputably valid copyright.

Mr. Whitmill's ownership is likewise beyond dispute. A copyright is owned by its author at the moment it is created and may only be transferred by a written assignment. Mr. Whitmill is the creator and author of the Original Tattoo and the photograph in Verified Complaint Exhibit 1, shows Mr. Whitmill in the act of creation as he is applying the Original Tattoo on Mr. Tyson.

> **B.      Warner Bros. Infringed Mr. Whitmill's Copyright by First Copying the Original Tattoo from Mr. Tyson's Face to Another Actor's Face and then by Repeatedly Copying, Reproducing, and Distributing the Pirated Tattoo in an Effort to Advertise, Promote, and Sell The Hangover 2.**

There is little question that copyright infringement exists here. A party can use direct evidence to demonstrate that constituent elements of the original work were copied by the allegedly infringing work. On information and belief, a significant plot element of The Movie involves the creation of the Pirated Tattoo by copying the Original Tattoo from Mr. Tyson to one of the movie's main characters. In other words, the plot of the movie hinges upon the copying of the Original Tattoo.

Even if there were no such direct evidence of copying, "[c]opying may be established . . . by showing that the defendants had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir.2006) (citing *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987)). There can be no dispute that Warner Bros. has had access to the Original Tattoo, which is one of the most famous tattoos in America. Indeed, a Google search for "Tyson face tattoo" turns up over 3 million results, including 493,000 images of that tattoo. And, of course, Mr. Tyson has a role in **THE HANGOVER 2**. So, this Court need only examine the substantial similarity between the Original Tattoo and the Pirated Tattoo.

 

In examining the substantial similarity issue, *Hartman* instructs the Court to employ a two-step analysis. "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works." *Hartman*, 833 F.2d at 120. The extrinsic test considers "'such objective criteria as the type of artwork involved, the materials used, the subject matter, and the setting for the subject.'" *Rottlund Co.*, 452 F.3d at 731 (quoting *Nelson v. PRN Prods.*, Inc., 873 F.2d 1141, 1143 (8th Cir.1989)). "Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120.

After copying the Original Tattoo to create the Pirated Tattoo, Warner Bros. photographed and filmed the Pirated Tattoo. Based upon the Movie poster, trailers, and reports in the news media, the Movie appears to be based, at least in part, upon the Original Tattoo. As a result, Warner Bros. has created many separate derivative works, including the Movie, Movie trailers, and Movie posters that

7

Warner Brothers then reproduced and distributed. *See* 17 U.S.C. § 106(2); 17 U.S.C. § 101 (defining derivative work as "work based upon one or more preexisting works [in form] in which a work may be recast, transformed, or adapted"). Significantly, Warner Bros. apparently (according to its advertisements) intends to distribute the infringing Movie throughout the country beginning May 26, 2011. This would infringe Mr. Whitmill's exclusive right to authorize derivative works. *See Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1373 (2d Cir. 1993) (infringement of exclusive right to make derivative work found where derivative work contains substantial amount of material from copyrighted work).

Even without reviewing the Movie and assessing additional potential claims for libel or violation of Mr. Whitmill's moral rights, he is likely to succeed on the merits of his copyright infringement claim and this justifies granting the requested preliminary injunction.[3]

### III. Continued Infringement of the Original Tattoo Copyright Will Irreparably Injure Plaintiff.

"Once the movant has established the likelihood of success on the merits [in a copyright infringement case], irreparable harm is presumed." *West Pub. Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986); *DF Inst. Inc. v. Marketshare EDS*, 84 USPQ 2d 1206, 1212 (D. Minn. 2007). A copyright owner "certainly has the right to control the use of its copyrighted materials, and irreparable harm inescapably flows from the denial of that right." *Taylor Corp. II*, 403 F.3d at 968. In addition to this presumption, irreparable harm is established where damages are difficult to measure. *Capitol Records Inc. v. Thomas-Rasset*, 680 F. Supp. 2d 1045, 1060 (D. Minn. 2010).

Mr. Whitmill will suffer irreparable harm unless Warner Bros. is enjoined from infringing the Original Tattoo. So far, Warner Bros. has infringed Mr. Whitmill's copyright through its advertisement and promotion of the movie. Warner Bros.'s planned widespread distribution of the

---

[3] When a movant demonstrates that he is likely to succeed on one of his claims entitling him to injunctive relief, the Court does not need to address the remaining claims. *Metric & Multistandard Components Corp. v. Metric's Inc.*, 635 F.2d 710, 715 (8th Cir. 1980).

8

movie before Mr. Whitmill even has an opportunity to see how his creation is used cannot be adequately compensated with money damages. Mr. Whitmill "certainly has the right to control the use of its copyrighted materials." *Taylor Corp. II*, 403 F.3d at 968. "The harm [Mr. Whitmill] face[s] is irreparable and monetary damages are inadequate precisely because actual damages are difficult to compute." *Id.*

## IV.     The Injury to Mr. Whitmill Outweighs any Threatened Harm to Warner Bros.

Mr. Whitmill has carefully stewarded his artistic reputation and his rights in his copyrighted creations.  Among other things, Mr. Whitmill has **never** reproduced the Original Tattoo on any other person and has **never** licensed the use of the Original Tattoo by others.  The apparent concept behind the Movie and the reproduction of the Original Tattoo not only involves irresponsible conduct by a tattoo artist but, in the process, tramples Mr. Whitmill's exclusive rights in the Original Tattoo. The widespread distribution and display of **THE HANGOVER 2** could in one day undermine Mr. Whitmill's effort over the course of his entire career.

Moreover, Warner Bros. would suffer little hardship because preliminarily enjoining the Warner Bros. would result only in a delay until Warner Bros. can adequately address Mr. Whitmill's concerns about the harm cause by the movie's depiction of his Original Tattoo. If the injunctive relief requested is granted, Warner Bros. will still be free to distribute other movies, to advertise or to advertise and release a version of **THE HANGOVER 2** that does not use the Pirated Tattoo. *See Peri Hal & Assoc. Inc. v. Elliot Inst. for Social Sciences Research*, 78 USPQ 2d 1414, 1416 (W.D. Mo. 2006) (balance of hardships favors plaintiff because defendant is free to create a non-infringing website and promote its ideas).

9

## V. Enjoining Defendants' Unlawful Conduct Is In The Public Interest.

"The public interest is served in protecting the holders of valid copyrights from infringing activity — an interest served here by the grant of a preliminary injunction against [Warner Bros.]" *Taylor Corp. v. Four Seasons Greetings, LLC [Taylor Corp. I]*, 315 F.3d 1039, 1042 (8th Cir. 2003).

## CONCLUSION

For the reasons set forth above, the present Motion for Preliminary Injunction should be granted in all respects.

Respectfully submitted,

*/s/ Geoffrey G. Gerber*
Michael A. Kahn (#35411MO)
mkahn@brickhouselaw.com
Pete Salsich III (#44886MO)
psalsich@brickhouselaw.com
Geoff G. Gerber (#47097MO)
ggerber@brickhouselaw.com
**The BrickHouse Law Group**
PROFESSIONAL CORPORATION
1006 Olive Street, Ste. 303
St. Louis, Missouri 63101-2048
Tel: (314) 932-1070

*Attorneys for Plaintiff*