```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE EASTERN DISTRICT OF MISSOURI

 3

 4
     S. VICTOR WHITMILL,
 5
             Plaintiff,
 6
         vs.                             NO. 4:11-CV-752 CDP
 7
     WARNER BROTHERS ENTERTAINMENT,
 8   INC.,

 9           Defendant.

10   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

11   PRESENT:    The Honorable Catherine D. Perry, Presiding

12   ATTORNEY FOR PLAINTIFF:  Michael A. Kahn, Geoffrey G. Gerber,
     Peter W. Salsich, III
13
     ATTORNEYS FOR DEFENDANT:  Frederick J. Sperling, Sondra A.
14   Hemeryck

15

16

17

18           Hearing on Motion for Preliminary Injunction

19                         May 24, 2011

20

21

22

23
                     TERI HANOLD HOPWOOD, RMR, CRR
24               Thomas F. Eagleton Courthouse
                      111 South Tenth Street
25                St. Louis, Missouri  63102
```

1          THE COURT:  We're here to resume the case of

2     Whitmill versus Warner Brothers, 4:11-CV-752.  I assume you all

3     didn't settle the case last night.

4          MR. SPERLING:  That's correct, Your Honor.

5          THE COURT:  The fact you're sitting here.  Well,

6     here is my ruling and the reasons for it.  I will not issue a

7     written opinion.  I will do a very short order setting this

8     out.

9          The facts are largely uncontested, and it's clear that

10    Whitmill created this tattoo as an original piece for Mr.

11    Tyson, and when he did it, Tyson signed a document saying that

12    Mr. Whitmill kept the rights.  Neither Tyson nor Warner

13    Brothers sought approval from Whitmill before either movie.

14         The first movie didn't do anything except show Mr.

15    Tyson's face.  There was no use of the tattoo apart from his

16    face, and until hearing about this movie, Mr. Whitmill was not

17    aware of any non-Tyson uses of the tattoo.

18         Then of course the second movie does use the tattoo on

19    another character's face.  It is the same tattoo.  It's in

20    every scene after the beginning pretty much, but this

21    particular tattoo is not significant to the plot line.  It has

22    some minor significance at the very end.

23         The tattoo artist in the studio portrayed in the film is

24    the typical negative stereotype of tattoo parlors, and Warner

25    Brothers has spent millions of dollars promoting the film and

1   promoting its scheduled opening later this week.  Those are the

2   facts, and I don't think any of them are really contested.

3          On the legal issues, there are four factors as you know

4   that I have to consider in the determination of granting a

5   preliminary injunction, and these are what we in the Eighth

6   Circuit call the Dataphase factors, but they are in many other

7   cases, including the Supreme Court cases.  Those are

8   plaintiff's likelihood of success on the merits, whether

9   plaintiff is threatened with irreparable harm, the balance of

10  the equities, and the public interest.

11         If I look at the likelihood of success on the merits, I

12  think plaintiff has a strong likelihood of prevailing on the

13  merits for copyright infringement.

14         Most of the defendant's arguments against this are just

15  silly.  Of course tattoos can be copyrighted.  I don't think

16  there is any reasonable dispute about that.  They are not

17  copyrighting Mr. Tyson's face, or restricting Mr. Tyson's use

18  of his own face, as the defendant argues, or saying that

19  someone who has a tattoo can't remove the tattoo or change it,

20  but the tattoo itself and the design itself can be copyrighted,

21  and I think it's entirely consistent with the copyright law,

22  and after all, in this case, Mr. Whitmill and Mr. Tyson did

23  have a contract dealing with this issue, which is totally

24  consistent and appropriate under copyright law.

25         I also do not think that there is any estoppel issue.

1   The only use that Mr. Whitmill knew of this tattoo before this

2   movie was all associated with Mr. Tyson, and he had a contract

3   with Mr. Tyson, and I don't think he delayed unnecessarily or

4   unduly in filing this lawsuit or in prosecuting the lawsuit, so

5   I do not see any estoppel arguments.

6       Then most importantly, there is no evidence at all that

7   Warner Brothers had any kind of a license implied or otherwise

8   to use the tattoo, and so Warner Brothers' use of the tattoo

9   was unauthorized, and I don't think that Mr. Tyson's trademark

10  application is inconsistent with this idea that Whitmill still

11  has a copyright, and it did have a contract with Mr. Tyson, and

12  if he wishes to, time to object to the trademark if he chooses

13  to do that, but I don't think that's inconsistent with the

14  theory plaintiff has espoused.

15      Finally, I just want to comment on the likelihood of

16  success on the merits analysis of the fair use or parody

17  argument.  This use of the tattoo did not comment on the

18  artist's work or have any critical bearing on the original

19  composition.  There was no change to this tattoo or any parody

20  of the tattoo itself.  Any other facial tattoo would have

21  worked as well to serve the plot device.

22      This was an exact copy.  It's not a parody.  There are

23  things you could do with this tattoo that could be a parody,

24  but that's not what was done in this case, and obviously, you

25  know, it's clear that wanting this tattoo makes sense because

1    it ties into Mr. Tyson who is not in the movie in any other

2    significant way, and I guess it's another reference or illusion

3    to the earlier movie which I guess sequels like to do, but they

4    could have used some other tattoo, or they could have parodied

5    the tattoo as some kind of a plot, and they did not do that.

6    Those are the reasons I think that plaintiff is likely to

7    succeed on the merits.

8         Then on the threat of irreparable harm, this is really a

9    legal issue that the parties have a great deal of dispute

10   about.  I do agree with the defendants that after eBay and

11   Winter, there is no presumption that simply because there is a

12   finding of likelihood of success on copyright infringement, or

13   even a finding of actual copyright infringement that there must

14   be an injunction, or there must be a finding of irreparable

15   harm.  I don't think that's the law any more, to the extent it

16   used to be, but I do think there is still harm caused by

17   unchecked infringement, and in many cases that will be

18   irreparable harm because you really cannot quantify the value

19   of losing control of the work of art, or an intangible interest

20   such as this.

21        I think when you look at the issue of what is the

22   irreparable harm, and how do you analyze the presumption versus

23   no presumption, there's a case that you all cited of MGM versus

24   Grokster, Judge Wilson's case, and I think its analysis of the

25   state of the law as to the presumption is very good, which

1    basically says there is no presumption, but it shouldn't be

2    very hard to show in most cases, and I think that's what

3    happened here.

4          There is no presumption, but the plaintiff has shown

5    irreparable harm, or that he has already suffered irreparable

6    harm and is in danger of suffering more irreparable harm if

7    this movie is not enjoined because he has lost control over the

8    image that he created, and a good example of that was the

9    7-Eleven promotion, where the image itself was being used to

10   signify something, and he had no compensation, no right to stop

11   that, no right to control it, so if the movie is released, he

12   will continue to lose control.

13         It will be difficult to compensate him by money damages,

14   which is the essence of irreparable harm, and saying there is

15   no presumption doesn't mean that there is no harm, irreparable

16   harm.  I can consider this evidence, so I believe irreparable

17   harm is shown in the case, and money damages would compensate

18   Mr. Whitmill somewhat, but he can't ever quantify exactly what

19   he has lost.

20         But that's just two of the four factors that are in

21   Whitmill's favor, and the other two weigh in favor of Warner

22   Brothers.

23         On the balance of the equities, the harm to Warner

24   Brothers is very large.  Warner Brothers has adequately shown

25   that it would lose millions, or over $100 million more likely

1    if the movie were enjoined.  Although I found Mr. Gerber's

2    argument about not having separate rules for big companies

3    versus little guys very -- a good argument and very compelling,

4    I think what I'm required to do when I consider the balance of

5    the equities or the balance of the harms in a preliminary

6    injunction is look at big versus little, and the rules are the

7    same, but the way it applies in this case at least favors the

8    big guy, and that is I have to compare the harms.

9        I assume Whitmill is a relatively small player, and he's

10    going to lose control of his art.  I look at Warner Brothers,

11    they are a very big player, and they are going to lose a lot of

12    money, but when you consider all of those things, I do think

13    that Warner Brothers' losses if I were to enjoin them outweighs

14    the harm to Whitmill if I were not.  Although the intangibles

15    he's losing can't be completely known or quantified, there is

16    some amount of money that will come close, and it's undoubtedly

17    a much smaller number than what Warner Brothers will suffer,

18    and I think it's significant.

19        This is just one tattoo.  We're not talking about

20    putting Mr. Whitmill out of business.  It's one design, and I

21    think that the balance of equities favors, when you compare the

22    harms, favors Warner Brothers.

23        Then the public interest is an interesting question.

24    Almost always in cases like this, the public interest analysis

25    really follows the likelihood of success on the merits analysis

1   because usually the public interest favors protection of

2   copyrights, and so it's often parallel to the likelihood of

3   success on the merits argument, but here I think it is

4   different.

5        To some extent, that the public wanted to see the movie

6   is something I can consider.  I do want to note that Warner

7   Brothers is really full of hyperbole, all this stuff about this

8   being the most anticipated thing in the history of the world I

9   think is carrying it a little far, but I do agree that the

10  public wants to see the movie, and Warner Brothers has done a

11  good job of promoting it, I guess.  I think that's a fairly

12  minor side to it, though.

13       The bigger one is that the owners who are not parties to

14  this case, and the people involved in the distribution who are

15  not parties to the case, I know it was argued that was part of

16  the harm to Warner Brothers, I don't really think it is.  I

17  think that's the harm to the public.  The public interest does

18  favor protecting the thousands of other business people in the

19  country as well as Warner Brothers, and not causing those

20  nonparties to lose money, and I think it would be significant,

21  and I think it would be disruptive.  I think that tilts the

22  public interest in favor of Warner Brothers on this because all

23  over the country people would be losing money if I were to

24  enjoin this movie.

25       So when I put all the four factors together, I'm going

1    to deny the preliminary injunction.

2         I do think that the plaintiff has a strong likelihood of

3    success on the merits, and will probably win the case at trial

4    for money damages.  I also think that the plaintiff is

5    obviously free to seek a prompt hearing on the permanent

6    injunction request.  Although we normally combine those, there

7    is no reason that we have to, and if the plaintiff chooses to

8    do that, or wishes to do that, we can do that, and we can have

9    a prompt hearing with more evidence, but I think that given --

10   I've told you my reasons, so I'm going to deny the motion for

11   preliminary injunction.

12        I will enter a short order simply denying the motion.

13   What I've stated here on the record are my reasons for doing

14   this, and so I will not issue a separate opinion.

15        I will also set a further scheduling conference in this

16   case to determine how we're going to proceed.  It is normally

17   my practice after every preliminary injunction hearing and

18   ruling, that is normally the point where I refer cases to

19   mediation because I find it's generally a good time to settle

20   the case.  In this case, because I know the parties have had

21   substantial settlement discussions previously, and because,

22   frankly, Mr. Sperling sort of told me yesterday that my ruling

23   on this was going to affect settlement negotiations, which I

24   think that means that Warner Brothers isn't going to be as

25   likely to want to settle with Mr. Whitmill, I'm not going to

1    order you right now because it sounded like they were acting

2    fairly unlikely to want to do much at this point if they won,

3    which doesn't mean they are not going to have to consider it in

4    the future, so I'll leave when to go to mediation something for

5    the scheduling conference, and I would like you all to talk

6    about that before we do have the scheduling conference in two

7    or three weeks.

8         Mr. Kahn, if you want a faster scheduling conference,

9    file a motion telling me when you want it, but what I would

10   really like to do is give you all some time to talk about it

11   and figure out when you want to go forward, if you do, with the

12   permanent injunction hearing faster than the normal course.

13        I also think we can do this case on a fairly expedited

14   basis because you all have exchanged a lot of information, and

15   I don't know how much more discovery is going to be needed.

16   That's my ruling and the reasons, and court is in recess.

17                  (A recess was taken.)

18

19                  REPORTER'S CERTIFICATE
          I, TERI HANOLD HOPWOOD, RMR, CRR, Official Court
20   Reporter for the United States District Court for the Eastern
     District of Missouri do hereby certify that the foregoing is a
21   true and correct transcript of the proceedings had in this
     cause as same appears from my stenotype notes made personally
22   during the progress of said proceedings.

23                       /S/ Teri Hanold Hopwood, RMR, CRR
                         TERI HANOLD HOPWOOD, RMR, CRR
24                       Official Court Reporter

25