IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| S. VICTOR WHITMILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 4:11-cv-752 CDP |
| ) | |
| WARNER BROS. ENTERTAINMENT INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S EMERGENCY MOTION FOR**
**EXPEDITED SCHEDULING CONFERENCE**

Plaintiff S. Victor Whitmill respectfully requests that this Court reschedule the Rule 16 Scheduling Conference, currently set for 10:30 on Friday, June 17, 2011, to a new time and date no later than Monday, June 6, 2011.  As stated below, attorneys for both parties would be available for a telephonic conference anytime after 2:30 on Friday, June 3 or after 2:30 on Monday, June 6.

In support of this motion, plaintiff states as follows:

1.     On May 24, 2011, this Court entered an Order (Doc. 41) denying plaintiff's motion for preliminary injunction and setting a telephonic scheduling conference for the morning of June 17, 2011.

2.     The Court found that, "the plaintiff has shown irreparable harm and is in danger of suffering more irreparable harm if this movie is not enjoined . . . [I]f the movie is released, he will continue to lose control [over the image that he created] . . . . [I]rreparable harm is shown in this case, and money damages would compensate Mr. Whitmill somewhat, but he can't ever quantify exactly what he has lost." (Doc. 46 (Tr. II) at 6:4-19.)

1

3.      The Court stated that "the plaintiff is obviously free to seek a prompt hearing on the permanent injunction request.  Although we normally combine those, there is no reason that we have to, and if the plaintiff chooses to do that, or wishes to do that, we can do that, and we can have a prompt hearing with more evidence . . . ." (*Id.* at 9:4-9.)

4.      The Court further stated that it would set the scheduling conference for two or three weeks out but that if plaintiff's attorneys "want a faster scheduling conference, file a motion telling me when you want it . . . ."  (*Id.* at 10:8-9.)

5.      The parties have made numerous efforts to reach agreement on a scheduling plan, beginning with a face-to-face meeting on the afternoon of May 24th and continuing with correspondence or telephone conferences on a daily basis through this morning.

6.      Defendant rejects Plaintiff's proposal for a bifurcated proceeding with an expedited trial on his request for a permanent injunction.

7.      A copy of Plaintiff's proposed scheduling plan (modified to accommodate delays during the parties' extensive efforts to agree on a joint schedule) is attached as Exhibit 1. A copy of Defendant's last circulated scheduling proposal is attached as Exhibit 2.

8.      Plaintiff respectfully submits that now that defendant has been allowed to open THE HANGOVER II, there is no reason to delay a hearing on the permanent injunction.  Moreover, there are at least the following compelling reasons not to delay that hearing, namely:

   a.      The principal public interest of concern to the Court — namely, the thousands of innocent theater owners who would have suffered financial consequences if the infringing movie were enjoined from opening on the Memorial Day weekend — has been eliminated.

    b.    The alleged hardship to Defendant — namely, the $80 million it spent on advertising it would lose if it was deprived of opening on time "the most anticipated thing in the history of the world" (*Id.* at 8:8) — has been eliminated. Indeed, as reported in the press, THE HANGOVER PART II "grossed $137.4 million over five days in North America, according to an estimate from distributor Warner Bros., the biggest opening for any R-rated comedy." ("Hollywood Enjoys a Record Memorial Day Weekend at the Box Office," LOS ANGELES TIMES, May 31, 2011.)[1]

9.    Thus a hearing later this summer on the request for a permanent injunction will impose no undue hardship on defendant.

10.    By contrast, the Court has found that plaintiff "has a strong likelihood of prevailing on the merits for copyright infringement" and has shown "that he has already suffered irreparable harm and is in danger of suffering more irreparable harm if the movie is not enjoined."

11.    Bifurcation will promote judicial economy. It will avoid unnecessary expense for both parties. The scope of Plaintiff's claim for monetary compensation is dependent on the outcome of the liability issues and the Court's determination of the injunction issue, so that neither party at this point can fully determine the damages evidence that would be presented to the trier of fact. Bifurcation will help streamline the discovery process in a heavily compressed discovery period. Bifurcation reduces the need for discovery at this time of potentially

---

[1] Proving that $81 million in marketing, almost all of which featured the Tattoo, trumped the extraordinary number of negative reviews of the movie. *See, e.g.,* "Oh, what a headache-inducing, unapologetic money grab we have in 'The Hangover Part II.'" (Los Angeles Times); "The movie's an unclean thing and a mostly unfunny one." (Boston Globe); "Part II is everything the first movie was, and less. It's crucially missing laughs and intelligence." (Toronto Star); "Nothing can cure this too familiar Hangover." (St. Louis Post-Dispatch).

confidential financial information. Finally, bifurcation would significantly reduce the risk of jury confusion.

12.     Bifurcation is commonly granted in copyright cases (*see, e.g., Ryan v. Carl Corp.*, 1999 WL 16320, *4-5 (N.D. Cal. Jan. 13, 1999) (ordering trial of liability and injunctive relief first, followed by trial on issue of damages if liability was established); *Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616, 630 (N.D. Cal. 1993) (bifurcating damages phase of trial from liability phase in copyright case), and this case presents a compelling case to apply the doctrine.

13.     In short, there is no reason to delay the hearing on the permanent injunction and compelling reasons to expedite it. Plaintiff's emergency request for an earlier scheduling conference and his proposed schedule for an expedited trial on Plaintiff's request for injunctive relief are intended to promote judicial efficiency by establishing a schedule that would provide Plaintiff with an opportunity to seek some measure of meaningful relief related to the irreparable harm Plaintiff continues to suffer.

14.     Two of Defendant's attorneys — Mr. Sperling and Ms. Hemeryck — advised Plaintiff's counsel yesterday that their workload in other cases will make them unavailable for a trial on the permanent injunction until at least November 2011.  We respectfully submit that the scheduling conflicts of two of the five attorneys who have filed appearances for defendant do not outweigh Plaintiff's irreparable harm, especially since another litigation partner at Schiff Hardin and a litigation partner at Thompson Coburn have participated in the preparation for the hearing on the preliminary injunction. Moreover, there are dozens, if not hundreds, of other experienced litigators and paralegals at both of those fine law firms who are fully capable of getting up to speed on the narrow issues in this case over the next eight weeks. Indeed, we should think that

Mr. Sperling and Ms. Hemeryck informed defendant of their other litigation workload before entering their appearances in a case that was obviously likely to move at a fast pace. In addition, Defendant had four of approximately thirty-four in-house attorneys attend the preliminary injunction hearing. At least one of which focuses on intellectual property and at least two of which focus on litigation.

15. Plaintiff's request is not intended to harass and creates no undue prejudice for Defendant.

Wherefore, plaintiff respectfully requests that the Court reschedule the Rule 16 scheduling conference for a time and day no later than Monday, June 6, 2011.

Respectfully submitted,

/s/ *Geoffrey G. Gerber*
Michael A. Kahn (#35411MO)
mkahn@brickhouselaw.com
Pete Salsich III (#44886MO)
psalsich@brickhouselaw.com
Geoff G. Gerber (#47097MO)
ggerber@brickhouselaw.com
**The BrickHouse Law Group**
PROFESSIONAL CORPORATION
1006 Olive Street, Ste. 303
St. Louis, Missouri 63101-2048
Tel: (314) 932-1070

Attorneys for plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the Court's electronic filing system on all counsel of record this 2nd day of June, 2011.

/s/ *Geoffrey G. Gerber*
*Attorney for Plaintiff*
*S. Victor Whitmill*

5