```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF MISSOURI

 3

 4
    S. VICTOR WHITMILL,
 5
              Plaintiff,
 6
         vs.                                  NO. 4:11-CV-752 CDP
 7
    WARNER BROTHERS ENTERTAINMENT,
 8  INC.,

 9            Defendant.

10  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

11  PRESENT:    The Honorable Catherine D. Perry, Presiding

12  ATTORNEY FOR PLAINTIFF:  Michael A. Kahn, Geoffrey G. Gerber,
    Peter W. Salsich, III
13
    ATTORNEYS FOR DEFENDANT:  Frederick J. Sperling, Sondra A.
14  Hemeryck

15

16

17
                              REDACTED
18          Hearing on Motion for Preliminary Injunction

19                         May 24, 2011

20

21

22

23
                   TERI HANOLD HOPWOOD, RMR, CRR
24                 Thomas F. Eagleton Courthouse
                       111 South Tenth Street
25                  St. Louis, Missouri  63102
```

1          THE COURT:  We're here to resume the case of
2  Whitmill versus Warner Brothers, 4:11-CV-752.  I assume you all
3  didn't settle the case last night.
4          MR. SPERLING:  That's correct, Your Honor.
5          THE COURT:  The fact you're sitting here.  Well,
6  here is my ruling and the reasons for it.  I will not issue a
7  written opinion.  I will do a very short order setting this
8  out.
9      The facts are largely uncontested, and it's clear that
10 Whitmill created this tattoo as an original piece for Mr.
11 Tyson, and when he did it, Tyson signed a document saying that
12 Mr. Whitmill kept the rights.  Neither Tyson nor Warner
13 Brothers sought approval from Whitmill before either movie.
14     The first movie didn't do anything except show Mr.
15 Tyson's face.  There was no use of the tattoo apart from his
16 face, and until hearing about this movie, Mr. Whitmill was not
17 aware of any non-Tyson uses of the tattoo.
18     Then of course the second movie does use the tattoo on
19 another character's face.  It is the same tattoo.  It's in
20 every scene after the beginning pretty much, but this
21 particular tattoo is not significant to the plot line.  It has
22 some minor significance at the very end.
23     The tattoo artist in the studio portrayed in the film is
24 the typical negative stereotype of tattoo parlors, and Warner
25 Brothers has spent millions of dollars promoting the film and

1    promoting its scheduled opening later this week.  Those are the
2    facts, and I don't think any of them are really contested.
3           On the legal issues, there are four factors as you know
4    that I have to consider in the determination of granting a
5    preliminary injunction, and these are what we in the Eighth
6    Circuit call the Dataphase factors, but they are in many other
7    cases, including the Supreme Court cases.  Those are
8    plaintiff's likelihood of success on the merits, whether
9    plaintiff is threatened with irreparable harm, the balance of
10   the equities, and the public interest.
11          If I look at the likelihood of success on the merits, I
12   think plaintiff has a strong likelihood of prevailing on the
13   merits for copyright infringement.
14          Most of the defendant's arguments against this are just
15   silly.  Of course tattoos can be copyrighted.  I don't think
16   there is any reasonable dispute about that.  They are not
17   copyrighting Mr. Tyson's face, or restricting Mr. Tyson's use
18   of his own face, as the defendant argues, or saying that
19   someone who has a tattoo can't remove the tattoo or change it,
20   but the tattoo itself and the design itself can be copyrighted,
21   and I think it's entirely consistent with the copyright law,
22   and after all, in this case, Mr. Whitmill and Mr. Tyson did
23   have a contract dealing with this issue, which is totally
24   consistent and appropriate under copyright law.
25          I also do not think that there is any estoppel issue.

1   The only use that Mr. Whitmill knew of this tattoo before this
2   movie was all associated with Mr. Tyson, and he had a contract
3   with Mr. Tyson, and I don't think he delayed unnecessarily or
4   unduly in filing this lawsuit or in prosecuting the lawsuit, so
5   I do not see any estoppel arguments.
6           Then most importantly, there is no evidence at all that
7   Warner Brothers had any kind of a license implied or otherwise
8   to use the tattoo, and so Warner Brothers' use of the tattoo
9   was unauthorized, and I don't think that Mr. Tyson's trademark
10  application is inconsistent with this idea that Whitmill still
11  has a copyright, and it did have a contract with Mr. Tyson, and
12  if he wishes to, time to object to the trademark if he chooses
13  to do that, but I don't think that's inconsistent with the
14  theory plaintiff has espoused.
15          Finally, I just want to comment on the likelihood of
16  success on the merits analysis of the fair use or parody
17  argument.  This use of the tattoo did not comment on the
18  artist's work or have any critical bearing on the original
19  composition.  There was no change to this tattoo or any parody
20  of the tattoo itself.  Any other facial tattoo would have
21  worked as well to serve the plot device.
22          This was an exact copy.  It's not a parody.  There are
23  things you could do with this tattoo that could be a parody,
24  but that's not what was done in this case, and obviously, you
25  know, it's clear that wanting this tattoo makes sense because

1   it ties into Mr. Tyson who is not in the movie in any other

2   significant way, and I guess it's another reference or illusion

3   to the earlier movie which I guess sequels like to do, but they

4   could have used some other tattoo, or they could have parodied

5   the tattoo as some kind of a plot, and they did not do that.

6   Those are the reasons I think that plaintiff is likely to

7   succeed on the merits.

8        Then on the threat of irreparable harm, this is really a

9   legal issue that the parties have a great deal of dispute

10  about.  I do agree with the defendants that after eBay and

11  Winter, there is no presumption that simply because there is a

12  finding of likelihood of success on copyright infringement, or

13  even a finding of actual copyright infringement that there must

14  be an injunction, or there must be a finding of irreparable

15  harm.  I don't think that's the law any more, to the extent it

16  used to be, but I do think there is still harm caused by

17  unchecked infringement, and in many cases that will be

18  irreparable harm because you really cannot quantify the value

19  of losing control of the work of art, or an intangible interest

20  such as this.

21       I think when you look at the issue of what is the

22  irreparable harm, and how do you analyze the presumption versus

23  no presumption, there's a case that you all cited of MGM versus

24  Grokster, Judge Wilson's case, and I think its analysis of the

25  state of the law as to the presumption is very good, which

1    basically says there is no presumption, but it shouldn't be

2    very hard to show in most cases, and I think that's what

3    happened here.

4            There is no presumption, but the plaintiff has shown

5    irreparable harm, or that he has already suffered irreparable

6    harm and is in danger of suffering more irreparable harm if

7    this movie is not enjoined because he has lost control over the

8    image that he created, and a good example of that was the

9    7-Eleven promotion, where the image itself was being used to

10   signify something, and he had no compensation, no right to stop

11   that, no right to control it, so if the movie is released, he

12   will continue to lose control.

13           It will be difficult to compensate him by money damages,

14   which is the essence of irreparable harm, and saying there is

15   no presumption doesn't mean that there is no harm, irreparable

16   harm.  I can consider this evidence, so I believe irreparable

17   harm is shown in the case, and money damages would compensate

18   Mr. Whitmill somewhat, but he can't ever quantify exactly what

19   he has lost.

20           But that's just two of the four factors that are in

21   Whitmill's favor, and the other two weigh in favor of Warner

22   Brothers.

23           On the balance of the equities, the harm to Warner

24   Brothers is very large.  Warner Brothers has adequately shown

25   that it would lose millions, or over XXXX XXXXXXX more likely

1   if the movie were enjoined.  Although I found Mr. Gerber's
2   argument about not having separate rules for big companies
3   versus little guys very -- a good argument and very compelling,
4   I think what I'm required to do when I consider the balance of
5   the equities or the balance of the harms in a preliminary
6   injunction is look at big versus little, and the rules are the
7   same, but the way it applies in this case at least favors the
8   big guy, and that is I have to compare the harms.
9          I assume Whitmill is a relatively small player, and he's
10  going to lose control of his art.  I look at Warner Brothers,
11  they are a very big player, and they are going to lose a lot of
12  money, but when you consider all of those things, I do think
13  that Warner Brothers' losses if I were to enjoin them outweighs
14  the harm to Whitmill if I were not.  Although the intangibles
15  he's losing can't be completely known or quantified, there is
16  some amount of money that will come close, and it's undoubtedly
17  a much smaller number than what Warner Brothers will suffer,
18  and I think it's significant.
19          This is just one tattoo.  We're not talking about
20  putting Mr. Whitmill out of business.  It's one design, and I
21  think that the balance of equities favors, when you compare the
22  harms, favors Warner Brothers.
23          Then the public interest is an interesting question.
24  Almost always in cases like this, the public interest analysis
25  really follows the likelihood of success on the merits analysis

1    because usually the public interest favors protection of

2    copyrights, and so it's often parallel to the likelihood of

3    success on the merits argument, but here I think it is

4    different.

5          To some extent, that the public wanted to see the movie

6    is something I can consider.  I do want to note that Warner

7    Brothers is really full of hyperbole, all this stuff about this

8    being the most anticipated thing in the history of the world I

9    think is carrying it a little far, but I do agree that the

10   public wants to see the movie, and Warner Brothers has done a

11   good job of promoting it, I guess.  I think that's a fairly

12   minor side to it, though.

13         The bigger one is that the owners who are not parties to

14   this case, and the people involved in the distribution who are

15   not parties to the case, I know it was argued that was part of

16   the harm to Warner Brothers, I don't really think it is.  I

17   think that's the harm to the public.  The public interest does

18   favor protecting the thousands of other business people in the

19   country as well as Warner Brothers, and not causing those

20   nonparties to lose money, and I think it would be significant,

21   and I think it would be disruptive.  I think that tilts the

22   public interest in favor of Warner Brothers on this because all

23   over the country people would be losing money if I were to

24   enjoin this movie.

25         So when I put all the four factors together, I'm going

1    to deny the preliminary injunction.
2           I do think that the plaintiff has a strong likelihood of
3    success on the merits, and will probably win the case at trial
4    for money damages.  I also think that the plaintiff is
5    obviously free to seek a prompt hearing on the permanent
6    injunction request.  Although we normally combine those, there
7    is no reason that we have to, and if the plaintiff chooses to
8    do that, or wishes to do that, we can do that, and we can have
9    a prompt hearing with more evidence, but I think that given --
10   I've told you my reasons, so I'm going to deny the motion for
11   preliminary injunction.
12          I will enter a short order simply denying the motion.
13   What I've stated here on the record are my reasons for doing
14   this, and so I will not issue a separate opinion.
15          I will also set a further scheduling conference in this
16   case to determine how we're going to proceed.  It is normally
17   my practice after every preliminary injunction hearing and
18   ruling, that is normally the point where I refer cases to
19   mediation because I find it's generally a good time to settle
20   the case.  In this case, because I know the parties have had
21   substantial settlement discussions previously, and because,
22   frankly, Mr. Sperling sort of told me yesterday that my ruling
23   on this was going to affect settlement negotiations, which I
24   think that means that Warner Brothers isn't going to be as
25   likely to want to settle with Mr. Whitmill, I'm not going to

1  order you right now because it sounded like they were acting

2  fairly unlikely to want to do much at this point if they won,

3  which doesn't mean they are not going to have to consider it in

4  the future, so I'll leave when to go to mediation something for

5  the scheduling conference, and I would like you all to talk

6  about that before we do have the scheduling conference in two

7  or three weeks.

8      Mr. Kahn, if you want a faster scheduling conference,

9  file a motion telling me when you want it, but what I would

10 really like to do is give you all some time to talk about it

11 and figure out when you want to go forward, if you do, with the

12 permanent injunction hearing faster than the normal course.

13     I also think we can do this case on a fairly expedited

14 basis because you all have exchanged a lot of information, and

15 I don't know how much more discovery is going to be needed.

16 That's my ruling and the reasons, and court is in recess.

17             (A recess was taken.)

18

19             REPORTER'S CERTIFICATE
       I, TERI HANOLD HOPWOOD, RMR, CRR, Official Court
20 Reporter for the United States District Court for the Eastern
   District of Missouri do hereby certify that the foregoing is a
21 true and correct transcript of the proceedings had in this
   cause as same appears from my stenotype notes made personally
22 during the progress of said proceedings.

23                  /S/ Teri Hanold Hopwood, RMR, CRR
                    TERI HANOLD HOPWOOD, RMR, CRR
24                  Official Court Reporter

25